LLOYD ROGERS, JR.

*v.*

STATE COMPENSATION COMMISSIONER, *et al.*
(CC 815)

and

WADE MARTIN

*v.*

STATE COMPENSATION COMMISSIONER, *et al.*
(CC 816)

Submitted September 1, 1954. Decided November 9, 1954.

LOVINS, JUDGE, concurring in part and dissenting in part.

*J. Strother Crockett, Crockett & Tutwiler,* for appellant.

*M. E. Boiarsky, R. L. Theibert, Franklin W. Kern, Winston C. Brown,* for appellees.

HAYMOND, JUDGE:

These cases involve the separate claims of Lloyd Rogers, Jr., and Wade Martin, former employees of Olga Coal Company, a corporation, for silicosis benefits. On joint motion of the attorneys representing the respective parties the cases have been consolidated and they will be dealt with in one opinion.

The legal question involved is whether an award of $1,000.00 in favor of each claimant for silicosis in the first stage is payable from the Workmen's Compensation Fund and chargeable to the account of the employer, Olga Coal Company, or is payable from the surplus fund provided for by the Workmen's Compensation Law.

The material facts in each case are not disputed.

The claimant Lloyd Rogers, Jr., was employed by the Olga Coal Company in 1934, and he continued to work for that company until his employment was terminated on May 12, 1950. He filed his application for silicosis benefits with the State Compensation Commissioner on April 29, 1952, which was within two years from the termination of his employment.

The claimant Wade Martin was employed by the Olga Coal Company in 1936, and he continued to work for that company until his employment was terminated on May 12, 1950. He filed his application for silicosis benefits with the State Compensation Commissioner on May 5, 1952, which was likewise within two years from the termination of his employment.

By order entered in each case in June, 1950, the commissioner denied the claimant compensation on the ground that he had not been exposed to the hazard of silicon dioxide dust for a continuous period of sixty days within two years preceding the date he filed his application. After objection by each claimant, the commissioner, by order entered October 9, 1952, in the Rogers case, and by order entered November 13, 1952, in the Martin case, affirmed his former order in each case.

It appears that Rogers worked only eight days for the Olga Coal Company, his employer, during the two year period immediately preceding the date of the filing of his application on April 29, 1952, and that Martin worked only six days for the Olga Coal Company, his employer, during the two year period immediately preceding the date of the filing of his application on May 5, 1952. Each claimant, however, was continuously employed by that company for more than ten years immediately preceding the date of his last exposure to the hazard of silicon dioxide dust.

Each claimant appealed to the Workmen's Compensation Appeal Board which, by order entered April 11, 1953, remanded each case to the commissioner for further consideration.

In compliance with the order of the appeal board the commissioner, by order entered May 20, 1953, set aside his former orders in each case and, by order entered May 26, 1953, found that each claimant had been exposed to the hazard of silicon dioxide dust in West Virginia during a continuous period of not less than two years during the ten years immediately preceding the date of his last ex-

posure and referred each claim to the Silicosis Medical Board. Upon objection and at the request of the employer for a nonmedical hearing the commissioner held such hearing in each case and by order entered October 9, 1953, affirmed his order of May 26, 1953. On October 27, 1953, the Silicosis Medical Board reported to the commissioner that the claimant in each case had silicosis in the first stage. The employer objected to the findings of the Silicosis Medical Board and, by order entered January 14, 1954, the commissioner approved the finding of the Silicosis Medical Board and awarded the claimant in each case compensation for silicosis in the first stage and charged each award to the account of the employer.

On February 9, 1954, the employer appealed each case to the Workmen's Compensation Appeal Board. By order entered April 15, 1954, the appeal board affirmed the order of the commissioner insofar as it awarded compensation to each claimant for silicosis in the first stage but reversed the order of the commissioner to the extent that it held the award to each claimant chargeable to the account of his employer, Olga Coal Company, and certified to this Court the ruling of the appeal board as to the charge-ability of the award in each case against the account of the employer.

The certificate of the appeal board, which was docketed in this Court on May 3, 1954, under Section 4, Article 5, Chapter 131, Acts of the Legislature, 1945, Regular Session, (Section 4, Article 5, Chapter 23, Michie's Annotated Code, 1949), presents this question: "Does the language used in Section 1, Article 4, Chapter 23, Code of West Virginia mean that a claimant must have been employed for at least as much as sixty days during the period of two years immediately preceding the filing of an application for silicosis benefits before such employer's account is charge-able with an award based upon such application, even though there is only one employer of claimant during said entire two year period?" The cases were submitted for decision on September 1, 1954, upon the written briefs and the oral arguments in behalf of the respective parties.

The validity of the award in favor of each claimant is not challenged in this Court, and the sole question for decision is that embraced in the certificate of the appeal board.

The workmen's compensation system in this State is the creature of legislation and in enacting the statute creating the system the Legislature exercised the police power of the State. *Blevins* v. *State Compensation Commissioner,* 127 W. Va. 481, 33 S. E. 2d 408. The underlying purpose of the Workmen's Compensation Law is to provide a system by which injuries due to industry may be liquidated and compensation provided for such injuries. See *Weatherford* v. *Arter,* 135 W. Va. 391, 63 S. E. 2d 572; *Mains* v. *The J. E. Harris Company,* 119 W. Va. 730, 197 S. E. 10, 117 A. L. R. 511. As that system is created solely by statute it is necessary, in resolving the question presented by the certificate, to consider and apply the pertinent statutory provisions.

Section 1, Article 3, Chapter 23, Code, 1931, as amended, relates to the creation of a workmen's compensation fund and a surplus fund and, in part, provides: "The commissioner shall establish a workmen's compensation fund from the premiums and other funds paid thereto by employers, as herein provided, for the benefit of employees of employers who have paid the premiums applicable to such employers and have otherwise complied fully with the provisions of section five, article two of this chapter, and for the benefit, to the extent elsewhere in this chapter set out, of employees of employers who have elected, under section nine, article two of this chapter, to make payments into the surplus fund hereinafter provided for, and for the benefit of the dependents of all such employees, and for the payment of the administration expenses of this chapter and shall adopt rules and regulations with respect to the collection, maintenance and disbursement of such fund not in conflict with the provisions of this chapter." The same section also provides for the creation of a surplus fund which "shall be sufficiently large to cover the

catastrophe hazard, the second injury hazard, and all losses not otherwise specifically provided for in this chapter."

Section la, Article 3, Chapter 131, Acts of the Legislature, 1945, Regular Session, (Section la, Article 3, Chapter 23, Michie's Annotated Code, 1949), provides that ten per cent of the fund collected and held as the workmen's compensation silicosis fund under the provisions of former Article 6, Chapter 79, Acts of the Legislature, 1935, Regular Session, which was incorporated as Article 6, Chapter 23, in the Code of 1931, and which was repealed by Chapter 131, Acts of the Legislature, 1945, Regular Session, shall be transferred to and made a part of the workmen's compensation fund provided for in Section 1, Article 3, Chapter 23, Code, 1931, as amended, and that the balance of the fund be refunded to the subscribers to such fund in proportion to their contributions to it under the provisions of former Article 6.

Section 1, Article 4, Chapter 23, Code, 1931, as amended, contains, among others, these provisions:

"Subject to the provisions and limitations elsewhere in this chapter set forth, the commissioner shall disburse the workmen's compensation fund to the employees of such employers as are not delinquent in the payment of premiums for the quarter in which the injury occurs, * * * or to the dependents, if any, of such employees in case death has ensued, according to the provisions hereinafter made; and also for the expenses of the administration of this chapter, as provided in section two, article one of this chapter.

"For the purposes of this chapter the terms 'injury' and 'personal injury' shall be extended to include silicosis and any other occupational disease as hereinafter defined, and the commissioner shall likewise disburse the workmen's compensation fund to the employees of such employers as are not delinquent in the payment of premiums for the last quarter in which such employees have been exposed to the hazard of silicon dioxide dust or to any other

occupational hazard, and have contracted silicosis or other occupational disease, * * *: Provided, however, that compensation shall not be payable for the disease of silicosis, or death resulting therefrom, unless in the State of West Virginia the employee has been exposed to the hazard of silicon dioxide dust over a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure to such hazards. An application for benefits on account of silicosis shall set forth the name of the employer or employers and the time worked for each, and the commissioner may allocate to and divide any charges on account of such claim among the employers by whom the claimant was employed for as much as sixty days during the period of two years immediately preceding the filing of the application. The allocation shall be based upon the time and degree of exposure with each employer."

Section 15, Article 4, Chapter 23, Code, 1931, as amended, provides in part: "To entitle any employee to compensation for silicosis under the provisions hereof, the application therefor must be made on the form or forms prescribed by the commissioner and filed in the office of the commissioner within two years from and after the last day of the last continuous period of sixty days or more during which the employee was exposed to the hazard of silicon dioxide dust. * * *"

Section 15b, Article 4, Chapter 131, Acts of the Legislature, 1945, Regular Session, as amended by Section 15b, Article 4, Chapter 136, Acts of the Legislature, 1949, Regular Session, (Section 15b, Article 4, Chapter 23, Michie's Annotated Code, 1949), also provides in part: "If a claim for silicosis benefits be filed by an employee, the commissioner shall determine whether the claimant was exposed to the hazard of silicon dioxide dust for a continuous period of not less than sixty days while in the employ of the employer within two years prior to the filing of his claim, and whether in the State of West Virginia the claimant was exposed to such hazard over a

continuous period of not less than two years during the ten years immediately preceding the date of his last exposure thereto."

In *Richardson* v. *State Compensation Commissioner*, 137 W. Va. 819, 74 S. E. 2d 258, this Court had under consideration the provisions of Sections 1 and 15, Article 4, Chapter 23, Code, 1931, as amended, and Section 15b, Article 4, Chapter 131, Acts of the Legislature, 1945, Regular Session, as amended by Section 15b, Article 4, Chapter 136, Acts of the Legislature, 1949, Regular Session, (Section 15b, Article 4, Chapter 23, Michie's Annotated Code, 1949), and in that case held that the last paragraph of Section 15 is the controlling statute with reference to the time of filing an application for silicosis benefits and that Sections 1 and 15b relate to the allocation of charges against the accounts of multiple employers. In *Bumpus* v. *State Compensation Commissioner*, 137 W. Va. 815, 74 S. E. 2d 262, the *Richardson* case was adhered to and followed by this Court. In the *Richardson* case and the *Bumpus* case, however, the precise question set forth in the present certificate concerning the chargeability of an award of silicosis benefits against the account of a single employer was not presented, considered or determined.

The effect of the quoted portion of Section 1a, Article 3, Chapter 131, Acts of the Legislature, 1945, Regular Session, (Section 1a, Article 3, Chapter 23, Michie's Annotated Code, 1949), was to abolish the formerly existing workmen's compensation silicosis fund, to refund all of that fund except ten per cent to its contributors, and to transfer the remaining ten per cent of that fund to the workmen's compensation fund.

Under the provisions of Section 1, Article 4, Chapter 23, Code, 1931, as amended, the terms "injury" and "personal injury" were extended to include silicosis and any other occupational disease as defined in the statute, and the compensation commissioner was required to disburse the workmen's compensation fund to the employees of such employers as are not delinquent in the payment of pre-

miums for the last quarter in which such employees have been exposed to the hazard of silicon dioxide dust or to any other occupational hazard, and have contracted silicosis or other occupational disease, if the claimant complies with the statutory requirements which apply to and govern his claim.

Section 1, Article 3, Chapter 23, Code, 1931, as amended, makes provision for the creation of a surplus fund in the manner set forth in the statute, and provides that such surplus fund shall be sufficiently large to cover the catastrophe hazard, the second injury hazard, and all losses not otherwise specifically provided for in Chapter 23. It is obvious that a claim for compensation for silicosis in the first stage does not relate to a catastrophe hazard within the statutory definition of a catastrophe. See *State ex rel. Mountain Fuel Company v. Trent,* 138 W. Va. 737, 77 S. E. 2d 608. It is also manifest that a claim for compensation for silicosis in the first stage does not involve a second injury hazard or a loss not otherwise specifically provided for in the statute. In consequence the surplus fund is not subject to a claim for compensation for silicosis in the first stage and such claim may not be charged against or paid from that fund.

Under the provisions of Section 1, Article 4, Chapter 23, Code, 1931, as amended, which extend the terms "injury" and "personal injury" to include silicosis and require the compensation commissioner to disburse the workmen's compensation fund to the employees of such employers as are not delinquent in the payment of premiums for the last quarter in which such employees have been exposed to the hazard of silicon dioxide dust and have contracted silicosis, a valid award of compensation for silicosis in the first stage is payable from the workmen's compensation fund and is chargeable against the account of his employer when the employee, in this State, has been exposed to the hazard of silicon dioxide dust for a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure to that hazard and, during that time, has not been in the

employment of any other employer. The provision of the section that the compensation commissioner may allocate to and divide any charges on account of a claim for silicosis benefits among the employers by whom the claimant was employed for as much as sixty days during the two years immediately preceding the filing of his application applies only to multiple employers and has no application to a single employer.

The certified question is answered in the negative and the ruling of the appeal board answering the question in the affirmative, being erroneous, is reversed.

*Ruling reversed.*

LOVINS, JUDGE, concurring in part and dissenting in part:

I have grave doubts whether a certified question propounded by the Workmen's Compensation Appeal Board is cognizable in this Court. It is true that the following statutory authority is found for the Workmen's Compensation Appeal Board to certify to this Court questions of law. "* * * The board may certify to the court (Supreme Court of Appeals) and request its decision of any question of law arising upon the record, and withhold its further proceeding in the case, pending the decision of court on the certified question, or until notice that the court has declined to docket the same. * * *". Chapter 131, Article 5, Section 4, Acts of the Legislature, 1945, Regular Session.

A cursory examination of the above quoted statute discloses that the language authorizing certification of a question pending by the Workmen's Compensation Appeal Board is so broad that given full effect would obviate any necessity for the statutory appeal provided for in the same statute and heretofore generally utilized.

The question relative to the chargeability of compensation benefits to the account of an employer is, in my opinion, an administrative question and does not contemplate the decision of a question of law.

I foresee a possibility and perhaps a probability that this opinion establishes a precedent in taking cognizance of

this certified question, and thus paves the way for advisory opinions by this Court to be furnished administrative agencies and departments of the State Government.

I do not think that this Court should interfere with the functions of other constitutional departments except when a judicial question requires determination. Article V of our constitution reads as follows: "The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the other; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature."

The statutory appeal to this Court from an order of the Workmen's Compensation Appeal Board authorized by Chapter 131, Article 5, Section 4, Acts of the Legislature, 1945, Regular Session, and prior statutes has been entertained by this Court under the original jurisdiction conferred by Article VIII, Section 3, Constitution of West Virginia. In discussing that question, this Court has stated: "* * * This proceeding is authorized by a statute different from the one under which *United Fuel Gas Company* v. *Public Service Commission,* 73 W. Va. 571, 80 S. E. 531, was instituted, but the constitutional provisions referred to in the opinion in that case, render it impossible to treat this one as an ordinary appeal or bring it within the appellate jurisdiction of this court. What the statute, sec. 43 of Chap. 10 of the Acts of 1913, denominates an appeal must, if possible, be regarded as a right given to a claimant to participation in the fund in question, to apply to this court for the exercise of its original jurisdiction. Any other construction would render the provision unconstitutional. The Commission itself is not a court. It is only an administrative board, possessing quasi-judicial and legislative powers. *United Fuel Gas Company* v. *Public Service Commission, cited.* Its powers, in the administration of the Workmen's Compensation Fund, are not sub-

stantially different from its powers over other matters within its control; and the principles upon which the jurisdiction of this court over its acts, by original process, was sustained in the case just cited, determine the jurisdictional question now presented." *DeConstantin* v. *Pub. Serv. Commission,* 75 W. Va. 32, 83 S. E. 88. It is to be noted that the Public Service Commission, in the *DeConstantin* case was performing the duty of administering the Workmen's Compensation Fund.

In the case of *Lively* v. *Commissioner,* 113 W. Va. 242, 167 S. E. 583, the first point of the syllabus reads as follows: "The jurisdiction conferred upon the supreme court of appeals by Code 1931, 23-5-1, to review acts of the commissioner, respecting the administration of the compensation fund, is original, not appellate; and, hence, is not controlled by the provision of sec. 3, Art. VIII, Const. W. Va., which confers appellate jurisdiction on this court in civil cases where the matter in controversy, exclusive of costs, is of greater value or amount than one hundred dollars." In *Caldwell* v. *Commissioner,* 107 W. Va. 272, 274, 148 S. E. 75, this Court uses the following language: "It is true that the remedy by appeal is in the nature of an exercise or original jurisdiction as by mandamus or prohibition *(United Fuel Co.* v. *Pub. Ser. Com.,* 73 W. Va. 571, 580) and is governed largely by the same legal principles and procedure, * * *". Further, this Court states in the case of *Saunders* v. *Comp. Comm'r.,* 112 W. Va. 212, 214, 164 S. E. 39: "The 'appeal' to this court provided for in the compensation statute is always regarded as an application to this court to exercise its original jurisdiction as by mandamus or prohibition and is governed largely by the same legal principles and procedure."

The statutory appeal from an order of the Workmen's Compensation Appeal Board rests solely upon the original jurisdiction of this Court, conferred by the first part of Section 3, Article VIII of the Constitution, and does not rest upon this Court's appellate jurisdiction, conferred by the latter part of Section 3, Article VIII of the Constitution.

This note raises the question of jurisdiction. Though such question is neither raised nor argued in brief and oral argument, nevertheless, a question of jurisdiction may be raised at any time prior to the final decision, and by the Court of its own motion. *Morehead et al.* v. *De Ford et al.,* 6 W. Va. 316; *Cresap* v. *Kemble,* 26 W. Va. 603; *Buskirk* v. *Ragland,* 65 W. Va. 749, 65 S. E. 101; *Charlotten* v. *Gordon,* 120 W. Va. 615, 618, 200 S. E. 740; *McKinley* v. *Queen,* 125 W. Va. 619, 625, 25 S. E. 2d 763; *Staats* v. *McCarty,* 130 W. Va. 240, 243, 43 S. E. 2d 826. In *Blosser* v. *Comp. Comm.,* 132 W. Va. 112, 116, 51 S. E. 2d 71, Judge Haymond, speaking for the Court, says: "The question was raised in conference by some members of the Court. As the question is jurisdictional in character, it will be considered and resolved by this Court on its own motion on this appeal. *Whited* v. *State Compensation Commissioner,* 131 W. Va. 646, 49 S. E. 2d 838; *Gapp* v. *Gapp,* 126 W. Va. 847, 30 S. E. 2d 530; *Morris* v. *Gates,* 124 W. Va. 275, 20 S. E. 2d 118; *Dawson* v. *Dawson,* 123 W. Va. 380, 15 S. E. 2d 156; *Charleston Apartments Corporation* v. *Appalachian Electric Power Company,* 118 W. Va. 694, 192 S. E. 294; *Arnold* v. *Mylius,* 87 W. Va. 727, 105 S. E. 920; *Buskirk* v. *Ragland,* 65 W. Va. 749, 65 S. E. 101; *Thompson* v. *Adams,* 60 W. Va. 463, 55 S. E. 668; *Cresap* v. *Kemble,* 26 W. Va. 603; *Kemble* v. *Cresap,* 26 W. Va. 603." To the same effect is the opinion of this Court in *Grottendick* v. *Webber,* 134 W. Va. 798, 803, 61 S. E. 2d 854.

Again adverting to the question of advisory opinions. I know of no constitutional or statutory provision authorizing such opinions by this Court.

I am fortified in this view by the fact that under our Code and the long established and continued practice, the Attorney General of this State is the legal advisor of the Executive Department of this State. See Chapter 2, Section 1, Acts of the Legislature, 1932, Extraordinary Session.

For the foregoing reasons, I do not think the statute, with reference to certified questions from the Workmen's

Compensation Appeal Board is constitutional and would therefore refuse to take cognizance of such question.

If the certified question is cognizable by this Court, I agree with the result reached, but I dissent from the action of the Court in assuming jurisdiction of the question here certified.