H. C. WHITE *v.* W. E. MORTON, *Sheriff, etc.*

(No. 7689)

Submitted September 6, 1933.   Decided September 12, 1933.
(Rehearing denied December 11, 1933.)

30

*Emmett Horan, B. J. Pettigrew* and *Wolverton & Ayres,* for relator.

*G. Dana Harold,* Prosecuting Attorney, and *A. N. Breckinridge,* and *Homer A. Holt,* Attorney General, for Intervener Fred L. Fox, State Tax Commissioner.

HATCHER, JUDGE:

In payment of state, county and district taxes for the year 1932, the petitioner presented to the sheriff of Nicholas County orders for that year drawn on the general county fund. That fund was greatly overdrawn at the time of the offer. The sheriff refused to accept the orders in full, but proposed to accept so much thereof as would be properly accredited to the general county fund. The proposal was rejected and petitioner seeks in this proceeding a mandamus to require the sheriff to accept his drafts in payment in full of his entire taxes.

The petitioner relies on Code 1931, 7-5-10, as applied in the cases of *State v. Melton,* 62 W. Va. 253, 57 S. E. 729, and *State v. Davis,* 74 W. Va. 261, 82 S. E. 207. The basic part of the above statute was adopted from the Virginia Code of 1860 and appears in the West Virginia Code of 1868, chapter 41, section 16. The statute in its present form requires a tax collector to receive in payment of taxes ''any county or school order or draft drawn on him pursuant to law, which is then due and payable, if the person offering the same in payment be the person entitled thereto at the time it is offered.'' The *Melton* case was decided in 1907 and the *Davis* case in 1914;

and both upheld the statute literally. Since those decisions, another statute has been enacted, to-wit, section 12, article 8, chapter 11, of the Official Code of 1931, which modifies the effect of those decisions. The later statute reads as follows: "Any funds derived from levying of taxes under or pursuant to the provisions of this article shall be expended for the purposes for which levied and no other." The obvious purpose of the statute is to prevent the raiding of one fund for the benefit of another. Unpaid taxes are not "funds derived" under a strict definition of the phrase, but they are potential funds. If a draft on an overdrawn fund is accepted in payment in full of unpaid taxes, the other funds embraced in the taxes are raided to that extent. The taxes in question were levied for the benefit of the county road fund, the school fund, the state fund and other special funds as well as for the general county fund. The acceptance of drafts on the general county fund in full of the taxes would deplete the other funds of the several sums which they would receive if the taxes were paid in cash. Thus indirectly would be done what the statute forbids to be done directly.

Construing the two statutes together as we must, we hold that when a taxpayer presents to the sheriff in payment of his taxes an order on a fund which is overdrawn, the taxpayer shall receive credit thereon for only so much of his taxes as is properly allocated to that fund.

The peremptory writ is accordingly refused.

*Writ refused.*